UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| JOHN DOE | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, | ) ) |
| | )   Civil Action No. 7:21cv645 |
| TIMOTHY SANDS, employee of Virginia Polytechnic Institute and State University, sued in his official capacity | ) ) ) ) |
| | ) |
|     Defendants. | ) ) |

## COMPLAINT

1. John Doe[1] files this Complaint against Virginia Polytechnic Institute and State University, Timothy Sands, to secure his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and a state law claim for breach of contract.

## Parties

2. Plaintiff John Doe ("Mr. Doe") is, and at all times relevant to this Complaint has been, a resident of New York.

3. Defendant Virginia Polytechnic Institute and State University ("Virginia Tech") is a public university incorporated, and with its principal place of business located, in Virginia.

4. At all times relevant herein, Defendant Timothy Sands was acting in his official capacity as President of Virginia Tech and resides in Virginia.

---

[1] "John Doe" is not Plaintiff's real name. He is proceeding under a pseudonym. Defendant will not be prejudiced by permitting him to proceed anonymously because it has knowledge of the actual identity of John Doe.

1

## Jurisdiction and Venue

5.  This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 2201, 2202, 1331 and 1343.

6.  Venue is proper pursuant to 28 U.S.C. § 1391. Virginia Tech is a public university created under the Virginia Code, incorporated and with its principal place of business in this district. The errors and omissions giving rise to Plaintiff's claims took place in this district.

## Facts

7.  In 2019, Mr. Doe accepted a written offer from Virginia Tech to enroll as an undergraduate student at its Blacksburg, Virginia, campus.

8.  Mr. Doe chose Virginia Tech because of its successful engineering program.

9.  By accepting Virginia Tech's offer to enroll as a student, Mr. Doe and Virginia Tech agreed that so long as he paid tuition, met its academic and conduct standards, and abided by its policies, he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his undergraduate degree.

10. Mr. Doe paid Virginia Tech tuition for the 2019-2020 and 2020-2021 years.

11. But for the academic misconduct matter that is the basis for this Complaint, Mr. Doe has otherwise met Virginia Tech's academic and conduct standards for the 2019-2020 and 2020-2021 years, to remain a student in good standing eligible to continue his education.

12. During Mr. Doe's enrollment as a student, Virginia Tech employed staff in the Office of Undergraduate Academic Integrity to resolve allegations of academic misconduct.

13. Dr. Sands, in his official capacity as President of Virginia Tech, supervised the Office of Undergraduate Academic Integrity and adopted written policies and procedures for its staff to follow to adjudicate allegations of academic misconduct.

14. The Virginia Tech Honor Code Manual (the "Honor Code"), attached as **Exhibit A**, is " the University policy that defines the expected standards of conduct in academic affairs".

15. The Honor Code is designed to "define and discuss the possible sanctions for academic misconduct, provide information about reporting suspected instances of misconduct, and review the procedures for resolving cases through the Office of Undergraduate Academic Integrity".

16. Under the Honor Code, the "Director of the Office of Undergraduate Academic Integrity assumes oversight of the Undergraduate Honor Code and reports directly to the Vice Provost for Undergraduate Academic Affairs or an administrator with a similar title and responsibilities"; additionally, "faculty members are expected to adhere to the policy pertaining to the reporting and adjudication of violations of the Honor Code."

17. The Honor Code prohibits cheating, "[a]cquiring answers from any unauthorized source," or plagiarism, "the copying of the language, structure, programming, computer code, ideas, and/or thoughts of another and passing off the same as one's own original work."

18. When a student is accused of academic misconduct, the Honor Code sets forth a series of specific procedures that faculty and staff must follow:

   a. "The faculty member/instructor should contact the Undergraduate Honor System within 10 University business days of observing, discovering, or receiving a report of an alleged incident of academic misconduct to begin a case file, discuss

      the UHS process, and request authorization to meet with the student to determine if academic misconduct has occurred."

b. "The faculty member/instructor will determine if they believe that academic misconduct has occurred. If no misconduct is found the case is dropped, no action against the student is taken, and the decision is reported to the Undergraduate Honor System. If the faculty member/instructor determines that there has been academic misconduct, the faculty member/instructor determines the severity of the violation and recommends a sanction in accordance with the Undergraduate Honor System policies and procedures."

c. "The faculty member/instructor shall inform the student of the recommended sanction and of the process. The student is required to check one of the response options on the Undergraduate Honor System Violation Report Form and sign the form."

d. "If the student accepts responsibility for the academic misconduct and accepts the sanction assigned by the faculty member/instructor, the Undergraduate Honor System Violation Report Form is sent to the Undergraduate Honor System within 10 University business days of the form being completed and signed by the student."

e. "If the student indicates on the Undergraduate Honor System Violation Report Form that they do not agree with the sanction, deny that misconduct occurred, or requests to discuss the matter further with a member of the Undergraduate Honor System's staff, the faculty member/instructor submits the Undergraduate Honor System Violation Report Form and all applicable documentation to the

    Undergraduate Honor System within 10 University business days….This submission begins the process by which the Undergraduate Honor System adjudicates the case."

f. "Reported violations of the Undergraduate Honor System are assigned to a member of the Undergraduate Honor System personnel for investigation. The Undergraduate Honor System gathers information from the reporting faculty member/instructor that supports the allegation. This may include, but is not limited to, the course syllabus, assignment guidelines, and any other materials that may assist in clarifying the case. The faculty member/instructor or reporter may also offer the names of others who have knowledge that could clarify the case."

g. "A member of the Undergraduate Honor System personnel meets with the student (when possible) to gather information. The accused student is given the incident report during this meeting. If the student has graduated or is absent from campus, the Honor System will attempt to contact the student in order to provide the student with the incident report. A member of the Undergraduate Honor System personnel may also meet with other persons who have information about the case. The accused student may give the Undergraduate Honor System personnel names of persons who may have clarifying information about the case. Interviews are conducted when necessary."

h. "A member of the Undergraduate Honor System's personnel completes a report to the Director of the Office of Undergraduate Academic Integrity summarizing all information collected and all interviews conducted. The report concludes with a recommendation on whether there is sufficient information to support the

        allegation of academic misconduct. … If there is sufficient information to support the allegation, the case continues to a hearing."

    i. "Undergraduate Honor System panel members are selected to serve on a hearing panel. The hearing panel is comprised as follows: three student panel members with voting privileges, two faculty panel members with voting privileges, and one nonvoting student chairperson."

    j. "A hearing date and time are set and all parties are notified in writing of the charges being levied, witnesses expected to appear at the hearing, all evidence in possession of the Undergraduate Honor System, hearing panel date, time, and location at least two business days prior to the hearing."

    k. "A script for the hearing panel will be provided to the panel members. The functions of the hearing panel members are as follows: listen to all who provide information, deliberate in private, make a decision on responsibility (by a simple-majority vote) based on the preponderance of evidence presented at the hearing, conduct the hearing as an educational hearing and not as an adversarial proceeding, and recommend sanctions in accordance with the Undergraduate Honor System's policies and procedures (when a student is found responsible for an Honor Code violation)."

    l. "The Director of the Office of Undergraduate Academic Integrity notifies the student in writing of the hearing panel's decision and sanctions (if the student is found responsible), normally within two business days after the hearing."

19. The Virginia Tech Information for Faculty, attached as **Exhibit B**, sets forth the following requirements for faculty who accuse a student of cheating:

  a. "A faculty member involved in a case is also expected to cooperate with Undergraduate Honor System personnel, *attend hearing panels*, faculty-student resolution meetings, and to maintain confidentiality."

20. The Virginia Tech Preparing for a Hearing Guide for Faculty, attached as **Exhibit C**, further clarifies the responsibilities of faculty or staff who accuse a Virginia Tech student of cheating and their obligation to participate in the Honor Code process and attend the hearing:

  a. "You should know that students who are reported to the Undergraduate Honor System have the right to know the name of the person who reported the alleged act of academic misconduct and may also view any and all information contained in their student case file."

  b. "Order of the Hearing… (4) The chairperson will ask the course instructor who is leveling the charge to give a brief overview of the events that led him/her to report the student for an alleged Honor Code violation. Information presented may include testimony of witnesses and supporting information on the charges."

21. The potential penalties for academic misconduct under the Honor Code include a failing grade for the class; suspension; or, permanent expulsion.

22. Virginia Tech expected Mr. Doe to follow the Honor Code as a condition of his enrollment at the university. In exchange for payment of tuition to Virginia Tech, Mr. Doe also expected Virginia Tech to uphold its promise to follow its own policies and procedures.

23. Given that Mr. Doe had paid tuition and met the minimum academic and conduct standards of the university, absent an adjudication of a policy violation in accordance with the Office of Undergraduate Academic Integrity, he had a legitimate claim of entitlement to earning credit for coursework and continued enrollment at Virginia Tech while pursuing his degree.

### *The February 2021 Notice of Academic Misconduct*

24. In Fall 2020, Mr. Doe enrolled in a prerequisite for his degree, Engineering Analysis Using Numerical Methods (ME 2004). His instructor was Professor Brian Vick. The class involved computer coding. It was conducted online via Zoom due to the pandemic.

25. In December 2020, Professor Vick accused more than 60 students, including Mr. Doe, of cheating on assignments during the semester.

26. Professor Vick filed a complaint with the Office of Undergraduate Academic Integrity. He said he and his fellow instructors had audited course submissions using software to identify potential plagiarism. He created a Google Drive with his findings in a folder. The *Final Exam, Homework, Midterm,* and *Workshop* folders contained PDF screenshots of class questions posted to Chegg.com and the corresponding solutions. The PDF's contained annotations briefly describing why the codes were suspicious.

27. Mr. Doe was accused of cheating on five assignments.

28. On February 21, 2021, the Office of Undergraduate Academic Integrity advised Mr. Doe via letter he had been referred to the Undergraduate Honor System for alleged cheating.

29. Mr. Doe denied the allegations and requested a hearing.

30. Mr. Doe explained that Professor Vick's teaching assistant had used an online portal called Discord to help students with assignments and using online resources like Google and YouTube to work on coding problems was "authorized," and therefore, not cheating.

31. Mr. Doe asked Virginia Tech to schedule a hearing as soon as possible because the class was a mandatory prerequisite for the remainder of his engineering degree; if he failed, he would lose an entire semester, and it would delay his graduation by a year.

32. Virginia Tech waited more than 10 months to schedule the hearing.

33. On October 7, 2021, the Student Conduct Office sent Mr. Doe a letter to schedule a hearing and set forth various rights. The hearing date was set for November 1, 2021.

### *The November 2021 Academic Misconduct Hearing*

34. On November 1, 2021, Mr. Doe appeared for the Honor Code hearing.

35. Professor Vick failed to appear for the hearing.

36. Mr. Doe had a right to confront his accuser at the hearing.

37. The Honor Code and related policies required Professor Vick to attend.

38. Virginia Tech offered no explanation for why Professor Vick failed to attend the hearing to answer Mr. Doe's questions. The hearing went forward without him.

39. During the hearing, Mr. Doe offered to present a visual aid he had prepared that explained why he had not cheated on the assignments. He wanted to show how the answers on the assignments were from authorized sources. He was not allowed to present the visual aid because the panel said it had not been turned in to the office at least two days in advance.

40. Mr. Doe pled "not guilty" to the charges.

41. Mr. Doe began the hearing by arguing his case without the visuals. He addressed all five assignments, while also explaining to the panel that his name and IP address was not on the list that the instructor had sent out that included the names and IP addresses of other students who used the "Chegg" website to help with coursework.

42. Many of the assignments Mr. Doe submitted were marked for cheating because the formulas used were at a higher level than taught in the class.

43. Mr. Doe discussed the necessity of using external sources for learning during the virtual class environment. For the purposes of this class, Mr. Doe admitted to using external sources such as YouTube, Discord, and others to help with learning the material. Mr. Doe said

this external learning as to the reason for some of the irregularities within how some of his homework problems were solved.

44. Mr. Doe said on one occasion, he used Chegg.com to check his answer on one of the assignments, but never on the others, and he denied cheating or plagiarizing. Per the class syllabus, he was not liable for cheating unless the audit revealed three or more instances of unauthorized use. He asked that he receive a failing grade for the one assignment and otherwise receive credit for the work that he did throughout the semester.

45. Mr. Doe would have asked Professor Vick to clarify the policy on Chegg.com; the fact that his teaching assistant facilitated the Discord group for using online sources; and, that in the rush to accuse so many students, Mr. Doe was lumped together with others who had signed-up with a Chegg.com account, but not him. However, since Professor Vick failed to appear, he was not able to confront his instructor with these questions.

46. No other witnesses were called and the hearing concluded.

47. On November 3, 2021, Mr. Doe received a letter from the panel, which found him to be guilty of all the accusations. His appeal was denied.

48. As a result of the panel's findings, Mr. Doe received an "F" in the class.

49. Having failed the class, he cannot register for his engineering classes in the Spring 2022 semester because it was a prerequisite. He must wait until the class is offered again, which may not be until the Summer 2022 or Fall 2022 semester. Effectively, he has been separated from the university for a semester, and his graduation delayed by an extra year. It will cost Mr. Doe additional money in housing, tuition, and course expenses, due to the delay in his graduation date, following the panel's decision. He had pleaded with the university to schedule the hearing sooner but to no avail. Now, without help from this Court, he has suffered irreparable harm.

50. Mr. Doe was denied a fair opportunity to be heard on the charges. An opportunity to be heard required more than a time and place for Mr. Doe to present his side. In order to fairly be heard, Mr. Doe needed to have the presence of the reporting faculty, so that he would have the opportunity to confront his accuser and be heard by the accused. Further, Mr. Doe was unable to present the visual evidence he had prepared.

51. Mr. Doe faces significant and severe consequences as a result of the university's decision to impose a failing grade and effectively suspend him.

52. Mr. Due has suffered disruption of his educational progress and a permanent blemish on his academic transcript. ME 2004 is a prerequisite for the classes Mr. Doe is required to take in order to graduate on time.

53. Mr. Doe asks this Court to grant declaratory and injunctive relief setting aside the conduct hearing result as violative of the U.S. Constitution.

### COUNT I – VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983 – PROCEDURAL DUE PROCESS (AGAINST ALL DEFENDANTS)

54. Mr. Doe realleges the foregoing paragraphs.

55. At the time Mr. Doe attended Virginia Tech, the university had in place a system of expelling, suspending, or sanctioning students for academic misconduct, only after a finding of cause, in accordance with its policies and procedures in the Honor Code and related policies.

56. Virginia Tech, through the specific policies and procedures set forth in the Honor Code, created a reasonable expectation that Mr. Doe, so long as he abided by the policies established therein, and otherwise paid his tuition and achieved satisfactory grades, would not be removed from the university of deprived of his right to pursue his degree, but for application of the system that Virginia Tech had enacted in student misconduct matters.

57. Therefore, Mr. Doe had a protected property interest in his education at Virginia Tech because, once he accepted his offer of admission and paid his tuition, and so long as he abided by the Honor Code and other policies, he was entitled to enrollment at Virginia Tech.

58. The due process protections of the Fourteenth Amendment to the United States Constitution apply to the disciplinary process used by Virginia Tech against Mr. Doe.

59. Mr. Doe was entitled to a fundamentally fair procedure to determine whether he was responsible for the alleged misconduct.

60. Defendants failed to provide adequate procedural due process when they failed to have the reporting instructor present at the hearing

61. As a result of the due process violations, the constitutional violations against Mr. Doe are ongoing in nature. He was wrongly disciplined and suffered harm to his educational progress.

## COUNT II – BREACH OF CONTRACT
## (AGAINST VIRGINIA TECH)

62. Mr. Doe realleges the foregoing paragraphs.

63. Mr. Doe provided Virginia Tech with sums of money for his education, and in return, Virginia Tech contracted to provide Mr. Doe with access to its degree program.

64. Mr. Doe's enrollment in, and attendance of, classes at Virginia Tech created an expectation that he would be allowed to continue his course of study until he earned his degree from Virginia Tech, provided that he maintained satisfactory grades and complied with Virginia Tech's rules and policies.

65. Accordingly, as a condition of Mr. Doe's enrollment at Virginia Tech, an express contractual relationship existed between Virginia Tech and Mr. Doe, under which each party owed the other certain duties.

66.	As a result of Virginia Tech's breach of contract and procedural irregularities, Mr. Doe suffered damages, including disruption of his educational progress; embarrassment; and, loss of good name.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Mr. Doe requests the Court award the following relief, and enter a judgment against the Defendants, jointly and severally:

a.	A declaratory judgment that the Defendants violated Mr. Doe's rights to due process;

b.	A preliminary injunction requiring the Defendants to lift Mr. Doe's "F" grade; remove the misconduct finding from his record; and, allow Mr. Doe to register for classes for the next available semester;

c.	A permanent injunction requiring Defendants to: expunge Mr. Doe's records at Virginia Tech of any indication of a finding that he was the subject of discipline;

c.	A permanent injunction (A) enjoining Defendants from: (i) continuing to enforce any sanction against Mr. Doe for the alleged policy violations; (ii) making any notation in Mr. Doe's educational or disciplinary records related to the incidents described in this Complaint; (iii) making any disclosure to a third party that any adverse disciplinary action was taken against Mr. Doe arising out of the incidents described in this Complaint; and, (B) ordering Defendants to allow Mr. Doe to earn the credit he lost for ME2004.

d.	An award of Mr. Doe's attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and any other appropriate authority;

e. An award of compensatory damages in an amount to be determined at trial for disruption of Mr. Doe's educational progress; and

f. Any other further relief as the Court deems just and appropriate.

JURY TRIAL DEMANDED

December 27, 2021                                    Respectfully submitted,

                                                     JOHN DOE

                                                     By: _____
                                                              Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone:  (540) 585-1776
Fax:    (540) 301-0833
Email:  rob@robdeanlaw.com

*Counsel for Plaintiff*